**Affirmed as Modified and Opinion Filed October 31, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01733-CR
### No. 05-12-01734-CR

**JESSIE ALAN HUCKEL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause Nos. F10-33708-L; F10-33709-L**

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Bridges

Jessie Alan Huckel appeals his convictions for credit card abuse in cause number 05-12-01733-CR and possession of less than one gram of methamphetamine in cause number 05-12-01734-CR. The trial court found appellant guilty of both offenses and sentenced him to eight years' confinement in each case, to run concurrently. In four issues, appellant argues he received ineffective assistance of counsel, the evidence is insufficient to support his convictions, and the judgment should be reformed to reflect that the underlying offenses were state jail felonies. As modified, we affirm the trial court's judgment.

On February 11, 2010, Audrey Gipson was working at an Extended Stay hotel in the northern part of Irving in Dallas County. Check out time at the hotel was 11:00 a.m., but "a few" of the tenants stayed past that time, including the tenants in room 377. Gipson knocked on the

door of room 377, received no answer, and "entered the room to check to see if any of his things were still there." On the kitchen table inside the room, Gipson found a prescription pill bottle without a label. Inside the bottle were small "zip-lock-like baggies" with a "kind of holographic print on them" and a "white-powder-like substance" in them. Gipson thought the powder was illegal narcotics, so she called the police. Gipson also contacted the registered occupant of the room, "Richard Darnell," to come to the front desk and get a new key for his room because his key had expired by that time. When police arrived, Gibson told them what she observed in the room, and they waited for the guest to come to the desk and get a new key.

Irving police officer Jeremy Johnston was dispatched to the hotel in response to a "violation of health and safety code" call. After speaking with Gipson, Johnston waited about an hour to see if the guest would come back. Johnston asked Gipson to call the registered occupant of the room to see if he was coming back and at what time. The registered occupant said he was "about an hour out," and he was going to "have somebody come by." Waiting in his car outside, Johnston received a phone call telling him someone had just come by to pick up the keys to room 377. Johnston and his partner, Officer Jessica Ryan, went to room 377 and knocked on the door. Johnston heard someone inside the room come up to the door as if someone was looking through the peephole and then heard "footsteps going back" and "footsteps rushing around a little bit." Johnston heard the toilet flushing, and about thirty seconds later, appellant answered the door.

Ryan asked appellant if she and Johnston could come in, and appellant gave his consent. Ryan asked if there was anybody else in the room. Ryan and Johnston could see "another female standing in the room," and appellant said there was nobody else in the room. Ryan asked permission to check the bathroom to "make sure no one was in there," and appellant gave his consent. While Ryan checked the bathroom, Johnston talked to appellant. Appellant said he was there to gather his friend's stuff, and his friend had asked him to come over to get it. The room

–2–

had various items "scattered out" inside: a laptop on the bed, "paperwork everywhere," a "nice printer," a paper cutter, and some bags of clothing. Taped "all over the keyboard" of the laptop were pictures of appellant and the woman with him in the room. Appellant claimed the room was "a room for one of his friends."

Ryan alerted Johnston that she saw "baggies of what appeared to be narcotics being flushed down the toilet" in the bathroom. Johnston asked appellant "if they were trying to flush it," and appellant did not say anything. Ryan also saw a digital scale, which is "often used to package narcotics for sale," on the top shelf by the bed. Appellant consented to a search of his person, and Johnston found "numerous credit cards, gift cards and receipts that were all in his pockets." One of the credit cards had a woman's name on it, and appellant said he got the card from his girlfriend. Upon further questioning, appellant changed his story and said he took the card from the "person that actually rented the room, who was Mr. Dellert." Appellant said he stole the card from Dellert. Johnston asked appellant about the "possible pill bottle" that "someone" had observed in the room, and appellant said he had hidden it in a paper towel roll. Appellant directed Johnston to where the bottle was hidden, and Johnston recovered the bottle. Johnston seized the bottle which subsequent testing showed contained less than one gram of methamphetamine. Appellant admitted that he smoked methamphetamine earlier in the day and said that when Johnston was knocking on the door appellant "was hiding the narcotics and trying to flush" them.

Among the papers in the room Johnston saw birth certificates, IDs, credit cards, photocopies of IDs, a fake ID of a white female, and "numerous paperwork dealing with people's different names on them." Ryan found a phone in the room, and both appellant and the woman claimed they owned it. Ryan "received verbal permission to search through the phone" and found "multiple text messages referencing the sale of gift cards, as well as narcotics

–3–

trafficking." The phone also contained pictures of appellant, the credit card Johnston found on appellant, and appellant holding the credit card.

Appellant testified he did not remember telling Johnston he had smoked methamphetamine the day he was arrested, but he admitted being a drug user at that time. Appellant testified the "things that were in this room" were not his. As to the phone found in the room, appellant testified it came from "Booda," a nickname for Dellert. The phone had been "turned on before," and appellant did not know if somebody else might have been using it. Appellant testified the text messages on the phone were not messages to him from Booda, and he did not remember getting any text messages "at the room." Appellant denied taking the picture of the stolen credit card or holding the stolen credit card in a picture, and he stated he had "no knowledge of that credit card." Appellant's intention in going to the hotel room was to get Booda's belongings and bring them to him. Appellant testified he had no reason to believe "any of it was illegal." Appellant said he "grabbed" a "stack of gift cards that were on the table" as soon as he walked into the room and did not look at the cards closely. Appellant was "trying to get in and out of there" and took the cards because Booda said he could have them for "getting his stuff." Appellant "had no clue" that one of the cards was a stolen credit card. The trial court found appellant guilty of credit card abuse and possession of less than one gram of methamphetamine, and these appeals followed.

In his first issue, appellant argues he received ineffective assistance of counsel at trial. To successfully assert an ineffective assistance of counsel challenge, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 10910 (Tex. Crim. App. 2003). An ineffective assistance of counsel claim must be

"firmly founded in the record," and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

The court of criminal appeals has made clear that, in most cases, a silent record will not overcome the strong presumption of reasonable assistance. *See Rylander*, 101 S.W.3d at 110. Further, counsel should ordinarily be accorded the opportunity to explain her actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). If trial counsel is not given that opportunity, then an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*.

Appellant filed a motion for new trial but did not raise a ground of ineffective assistance nor has he otherwise developed a record showing how his counsel was ineffective. Under these facts and circumstances, we cannot conclude the record shows either deficient performance or a reasonable probability that the result of the proceeding would have been different. We overrule appellant's first issue.

In his second and third issues, appellant argues the evidence is insufficient to support his convictions for credit card abuse and possession of methamphetamine. In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894-95 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We are required to defer to the factfinder's credibility

and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326. The fact finder may choose to believe or disbelieve all or any part of any witness's testimony. *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.).

A person commits credit card abuse if he is not the cardholder and, without the cardholder's effective consent, he possesses the card with intent to use it. *See* TEX. PEN. CODE ANN. § 32.31(b)(8) (West 2011). The record contains the testimony of the cardholder of the credit card at issue establishing the card was stolen from her vehicle. Appellant was in possession of the stolen credit card and was carrying it in his pocket. Appellant had a picture of the credit card on his phone. Under these circumstances, the trial judge, as fact finder, could have found beyond a reasonable doubt that appellant possessed the stolen credit card with intent to use it. *See Jackson*, 443 U.S. at 326. Similarly, the fact finder was entitled to disbelieve appellant's testimony that he was unaware of the stolen credit card in his pocket and did not intend to use it. *See Taylor*, 106 S.W.3d at 830. Thus, the evidence is sufficient to support appellant's credit card abuse conviction. *See Jackson*, 443 U.S. at 326. We overrule appellant's second issue.

To support a conviction for possession of narcotics, the State must prove two elements: (1) the accused exercised actual care, custody, control or management over the narcotics and (2) the accused knew that the matter "possessed" was contraband. *Taylor*, 106 S.W.3d at 830. If the accused was not in exclusive possession of the contraband, the State is required to present evidence affirmatively linking him to it. *Id.* at 830-31. No set formula of facts exists that would dictate a finding of affirmative links sufficient to support an inference of knowing possession of contraband. *Id.* at 831. The number of links is less important than the "logical force" or degree

to which the links, alone or in combination, tend to affirmatively link the accused to the contraband. *Id.*

Possible affirmative links include: (1) whether the defendant was present when the drugs were found; (2) whether the drugs were in plain view; (3) whether the drugs were found in proximity to and accessible to the defendant; (4) whether the defendant was under the influence of drugs when arrested; (5) whether the defendant possessed other contraband or drug paraphernalia; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of drugs; (10) whether the defendant owned or had the right to possess the place where the drugs were found; (11) whether the place the drugs were found was enclosed; (12) the amount of drugs found; (13) whether the defendant possessed weapons; and (14) whether the defendant possessed a large amount of cash. *Id.*

Here, appellant was present in the hotel room when the drugs were found. The drugs in the pill bottle had been in plain view when Gipson entered the room previously, but appellant hid the bottle in a paper towel roll when police knocked on the door. The record also shows Ryan found evidence of narcotics being flushed down the toilet, and Johnston heard a toilet flush and footsteps inside the room before appellant opened the door. Appellant admitted that he smoked methamphetamine earlier in the day and said that when Johnston was knocking on the door appellant "was hiding the narcotics and trying to flush" them. Ryan also saw a digital scale, which is "often used to package narcotics for sale," on the top shelf by the bed. Viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant possessed the methamphetamine in this case. *See Jackson*, 443 U.S. at 326. We overrule appellant's third issue.

In his fourth issue, appellant argues the judgment in each case should be reformed to properly reflect that the offenses are both state jail felonies. The State agrees that both judgments should be reformed. This Court may modify an incorrect judgment and affirm it as modified. TEX. R. APP. P. 43.2(b) Accordingly, we modify the judgment in each case to reflect that the offense in each case was a state jail felony.

As modified, we affirm the trial court's judgments.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121733F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESSIE ALAN HUCKEL, Appellant

No. 05-12-01733-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F10-33708-L.
Opinion delivered by Justice Bridges.
Justices Fillmore and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The description of the offense as a "third degree felony" is deleted, and "state jail felony" is substituted in its place.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered October 31, 2013

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESSIE ALAN HUCKEL, Appellant

No. 05-12-01734-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F10-33709-L.
Opinion delivered by Justice Bridges.
Justices Fillmore and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> The description of the offense as a "third degree felony" is deleted, and "state jail felony" is substituted in its place.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered October 31, 2013

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE